COOLEY LLP
KOJI F. FUKUMURA (189719) (kfukumura@cooley.com)
RYAN E. BLAIR (246724) (rblair@cooley.com)
ERIN C. TRENDA (277155) (etrenda@cooley.com)
HEATHER M. SPEERS (305380) (hspeers@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

*Attorneys for Defendants Activision Blizzard, Inc., Robert A. Kotick, and Collister Johnson*

[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASE HAMANO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN AND COLLISTER JOHNSON,<br><br>Defendants. | Case No.  2:19-CV-03788-SVW-AFM<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date:      September 16, 2019<br>Time:      1:30 p.m.<br>Judge:    Hon. Stephen V. Wilson |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. PLAINTIFF CONCEDES THAT THE STATEMENTS MADE ON THE AUGUST 2 AND NOVEMBER 8, 2018 EARNINGS CALLS WERE NOT FALSE OR MISLEADING. ........................................................................ 2

III. AS TO THE REMAINING STATEMENTS, PLAINTIFF FAILS TO PLEAD FALSITY. ......................................................................................... 3

    A. The Complaint Contains No Particularized Facts Identifying *When* Activision and Bungie Began Discussing the Potential Termination of the Licensing Agreement. ............................................................ 4

    B. The Challenged Statements Required No Additional Disclosures About the Status of the Activision/Bungie Relationship. ................. 8

    C. Even If Negotiations Were Underway, Defendants Had No Duty to Disclose Speculative or Uncertain Outcomes. ............................. 10

IV. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ...................................................................................................... 12

    A. The Licensing Agreement Does Not Raise a Strong Inference of Scienter. ...................................................................................... 13

    B. The Core Operations Inference Does Not Raise a Strong Inference of Scienter. ................................................................................... 14

    C. Plaintiff's Motive Allegations Do Not Bolster Any Inference of Scienter. ...................................................................................... 15

    D. Collectively, Plaintiff's Allegations Do Not Raise a Strong Inference of Scienter. ................................................................. 15

V. PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION. .............................. 16

VI. CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Angeles v. U.S. Airways, Inc.*,
  2013 WL 622032 (N.D. Cal. Feb. 19, 2013)............................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................... 8

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ............................................................................... 14, 15

*In re BofI Holding, Inc. Sec. Litig.*,
  302 F. Supp. 3d 1128 (S.D. Cal. 2018) .................................................................... 16

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ..................................................................................... 2

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ..................................................................................... 4

*Couturier v. Am. Invsco Corp.*,
  2013 WL 4499008 (D. Nev. Aug. 20, 2013).............................................................. 5

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017) ............................................................................. 14, 15

*In re Dot Hill Sys. Corp. Sec. Litig.*,
  594 F. Supp. 2d 1150 (S.D. Cal. 2008) .................................................................... 13

*In re Express Scripts Holdings Co. Sec. Litig.*,
  2019 WL 2004302 (2d Cir. May 7, 2019)................................................................. 11

*Green Desert Oil Grp. v. BP W. Coast Prod.*,
  2012 WL 555045 (N.D. Cal. Feb. 21, 2012).............................................................. 2

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013)............................................................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hutchins v. NBTY, Inc.*,
2012 WL 1078823 (E.D.N.Y. Mar. 30, 2012) ..................................................... 11, 12

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ...................................................................... 16

*Levinson v. Basic*,
871 F.2d 562 (6th Cir. 1989) ....................................................................... 9

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .................................................................... 17

*Matrixx Initiatives, Inv. v. Siracusano*,
563 U.S. 27 (2011) ................................................................................. 9

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) .................................................................. 16

*Motorcar Parts of Am., Inc. v. FAPL Holdings Inc.*,
2015 WL 12746204 (C.D. Cal. Feb. 6, 2015) .................................................... 11

*In re Nvidia Corp. Sec. Litig.*,
2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) .................................................... 15

*Plevy v. Haggerty*,
38 F. Supp. 2d 816 (C.D. Cal. 1998) .............................................................. 8

*Qureshi v. Countrywide Home Loans, Inc.*,
2010 WL 841669 (N.D. Cal. Mar. 10, 2010) ...................................................... 2

*River Birch Capital, LLC v. Jack Cooper Holdings Corp.*,
2019 WL 1099943 (S.D.N.Y. Mar. 8, 2019)...................................................... 10

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ..................................................................... 6

*Sec. & Exch. Comm'n v. Jammin Java Corp.*,
2016 WL 6595133 (C.D. Cal. July 18, 2016) ...................................................... 7

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009) ................................................................ 14, 15

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Smith v. Harrington*,
   2013 WL 132465 (N.D. Cal. Jan. 9, 2013)......................................................................... 3

*Steckman v. Hart Brewing, Inc.*,
   1996 WL 881659 (S.D. Cal. Dec. 24, 1996) ....................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................. 12

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ......................................................................................... 7, 17

*In re VeriFone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993)................ 10

**Other Authorities**

Fed. R. Civ. P. Rule 8 ......................................................................................................... 8

Fed. R. Civ. P. Rule 9(b)............................................................................................ 4, 8, 12, 17

Cal. R. Prof. Conduct 3.3 ................................................................................................ 11

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

## I.   INTRODUCTION

The Opposition confirms what Defendants' Opening Brief laid bare—working backward from Activision's January 2019 announcement that it was ending its licensing deal with Bungie for *Destiny*, ***Plaintiff can only speculate as to when negotiations to end the relationship began***.   Not only does the Opposition double-down on this impermissible hindsight and speculation, it stretches the Complaint's allegations beyond recognition, and avoids or mischaracterizes the arguments in the Opening Brief. The most egregious examples of this include:

- Misattributing statements made by ***Bungie's*** Chief Operating Officer that *Destiny* was ***his company's*** "number one priority" and ***his*** "entire[ ] focus[ ]" to "Activision's senior management" (*Compare* ¶ 31 *with* Opp. at 19:21–24)[1];

- Manufacturing additional "problems" between Activision and Bungie (*e.g.*, supposed disagreement as to the quality of *Destiny*) that are squarely contradicted by the allegations in the Complaint (*Compare* ¶¶ 39, 46 *with* Opp. at 7:17–19); and

- Claiming Defendants "do not dispute" that Plaintiff adequately alleged why the challenged statements were misleading despite nearly 10 pages of the Opening Brief discussing all the ways in which Plaintiff failed to plead falsity with particularity (*Compare* MTD at 9:3–18:20 *with* Opp. at 10:18–19).

The Opposition does, however, narrow the issues in this case considerably.  The Opposition concedes that two of the four statements challenged in the Complaint are not false or misleading.  (Opp. at 8:8–19.)  It confirms that Plaintiff's theory of fraud is based solely (and erroneously) on speculation that Activision and Bungie were engaged in negotiations to terminate the Licensing Agreement on or before August 2018.  (*Id.* at 10:24–27.)   And it tapers Plaintiff's scienter allegations, expressly disclaiming any

---

[1] All "¶__" references are to the Complaint (ECF No. 76), all "MTD at __" references are to the Opening Brief (ECF No. 78-1), and all "Opp at __" references are to the Opposition (ECF No. 80).  All pin cites are to the page numbers at the bottom of the Opening Brief and Opposition.

1.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

reliance on allegations concerning the meeting of High Moon Studios personnel. (*Id.* at 20:22–26.) All that remains are Plaintiff's allegations about various provisions of the Licensing Agreement (which do not implicate the Individual Defendants) and generic motive allegations common to all companies. (*Id.* at 18:18–22:18.)

Finally, the Opposition expressly renounces a "realization-of-the-risk" loss causation theory, relying instead on a "corrective disclosure" theory. (*Id.* at 23 n.8.) Plaintiff, however, has not (and cannot) identify how termination of the Licensing Agreement "corrected" historically accurate statements that Activision and Bungie ***had*** established a "long-term alliance" and that *Destiny **was*** a "key product franchise." Rather, Plaintiff identifies only the disclosure of disappointing and unexpected news.

For all the reasons discussed in Defendants' Opening Brief, and the additional reasons discussed herein, the Complaint should be dismissed. Further, the Opposition has established that Plaintiff cannot remedy the Complaint's myriad pleading defects. The Complaint therefore should be dismissed with prejudice.

## II. PLAINTIFF CONCEDES THAT THE STATEMENTS MADE ON THE AUGUST 2 AND NOVEMBER 8, 2018 EARNINGS CALLS WERE NOT FALSE OR MISLEADING.

The Complaint challenged four statements (¶¶ 44–46, 48; MTD at 9:16-24); the Opposition addresses only two (Opp. at 8:8–19). "A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim." *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 888 (9th Cir. 2010); *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in his opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims").[2]

---

[2] *See also See Green Desert Oil Grp. v. BP W. Coast Prod.*, 2012 WL 555045, at *2 (N.D. Cal. Feb. 21, 2012) ("Importantly, although the [complaint] lists a significant number of alleged breaches of contract, and Defendant moves to dismiss all of them, Plaintiffs only defend three of the alleged breaches . . . Defendant correctly asserts that Plaintiffs have abandoned their other breach of contract claims. The abandoned claims are dismissed without leave to amend.") (internal citations and parentheticals omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

Here, Plaintiff fails to address Defendants' arguments as to the statements made on the August 2 and November 8, 2018 earnings calls concerning Activision and Bungie's joint development efforts regarding *Destiny* prior to and during the Class Period. Moreover, Plaintiff explicitly sets forth a summary of challenged statements that omits these statements. (Opp. at 8:8–19.) Plaintiff's decision to abandon this challenge is not surprising given that they directly contradict Plaintiff's speculative theory that Activision's relationship with Bungie was "doomed" as of August 2, 2018. (*Id.* at 12:19–20.)

Regardless of the reason, Plaintiff's concession that none of the statements made on the August 2 and November 8, 2018 earnings calls were false or misleading warrants dismissal with prejudice. *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) (stating, "[t]he failure to respond amounts to a concession," and granting motion to dismiss unopposed claims with prejudice); *Smith v. Harrington*, 2013 WL 132465, at *11 (N.D. Cal. Jan. 9, 2013) ("In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.").

### III.   AS TO THE REMAINING STATEMENTS, PLAINTIFF FAILS TO PLEAD FALSITY.

The only statements challenged in the Opposition are from Activision Blizzard's Q2 2018 and Q3 2018 SEC filings, characterizing *Destiny* as a "key product franchise[]" and noting that Activision "established a long-term alliance with Bungie to publish its game universe, *Destiny*."[3] (Opp. at 8:8–8:19.) Conceding the accuracy of these statements (Opp. at 14:13–15), Plaintiff nonetheless argues—based exclusively on its own speculation—that the statements were misleading because "Activision and Bungie ***were already in the process*** [of] terminating that alliance, which would result in the loss of the Destiny franchise and all revenue and profits generated by the game." (Opp.

---

[3] Notably, these exact statements have been used in the Company's SEC filings since 2016 to describe *Destiny* and the Activision/Bungie relationship. (*See, e.g.*, ECF No. 78-2, Exh. C at 20.)

at 10:25–27 (emphasis added).)  In other words, Plaintiff's theory of fraud rests solely on the premise that the companies were *already negotiating the termination* in August 2018.

As discussed in the Opening Brief, and below, this theory fails for three reasons. *First*, there are no factual allegations in the Complaint supporting this theory.  Plaintiff's speculation that negotiations "must have been" ongoing is simply not enough; both the PSLRA and Federal Rule of Civil Procedure ("Rule") 9(b) require the circumstances surrounding the allegations of fraud to be pled with particularity.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).  (MTD at 15:16–17:2.)  *Second*, the challenged statements were accurate statements of historical and present fact, and did not guarantee anything about the future of the Activision/Bungie relationship.  In other words, these statements were not rendered misleading by any omission.  *Third*, even if negotiations were taking place (they were not), Defendants had no duty to disclose uncertain or speculative outcomes. The Complaint is bereft of any well-pled fact that, as of the date when the challenged statements were made, a termination of the Licensing Agreement was virtually a *fait accompli*.  (MTD at 14:6–15:15, 16:19–17:2.)

**A.    The Complaint Contains No Particularized Facts Identifying *When* Activision and Bungie Began Discussing the Potential Termination of the Licensing Agreement.**

Every argument in the Opposition is premised on the assumption that negotiations to terminate the Licensing Agreement were already underway in August 2018.  Plaintiff argues this assumption is supported by the following three allegations: (1) alleged problems between Activision and Bungie dating back to January 2016; (2) the "shifting" of High Moon Studios supplemental development resources away from *Destiny* in late spring 2018; and (3) NetEase's June 2018 investment in Bungie.  (Opp. at 14:21–15:7.)  Critically, however, none of these allegations demonstrates that Activision and Bungie had *begun* negotiating the termination of the Licensing Agreement as early as August or November 2018 (the dates on which the challenged

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM

statements were made), much less that termination was the probable outcome at that time.

**Purported Relationship Problems**. Plaintiff relies most heavily on purported problems between Activision and Bungie dating back to January 2016. (Opp. at 14:23–25; *see also id.* at 5:7–7:23, 15:16–22.) However, Plaintiff does not allege that negotiations to terminate the Licensing Agreement date back that far.[4] Nor does Plaintiff challenge the same exact "key product franchise" and "long-term alliance" statements made in Activision Blizzard's filings during 2016, 2017, or the first half of 2018. Instead, Plaintiff simply points to purported problems and expects the Court to fill in the gaps as to how, in August 2018, they suddenly indicated that the Activision/Bungie relationship was "doomed" and that negotiations to terminate the Licensing Agreement were underway. (Opp. at 12:19–20.) But, "[a] judge is the impartial umpire of legal battles, not a party's attorney. He is neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments." *Couturier v. Am. Invsco Corp.*, 2013 WL 4499008, at *3 (D. Nev. Aug. 20, 2013) (citation omitted).

Moreover, Plaintiff does not allege that the decision to terminate the Licensing Agreement was predicated on any of the purported problems outlined in the Complaint. (MTD at 12:4–13.) Nor could it, given that the Complaint contains no facts indicating whether the purported problems between Activision and Bungie were significant enough to warrant termination. (*See* MTD at 11:19–12:22.)

Even worse, the Opposition attempts to manufacture problems that are expressly contradicted by the allegations in the Complaint. For example, Plaintiff argues that "during Activision's November 8, 2018 earnings call, [Mr.] Johnson blamed Activision's poor results on the ***quality*** of *Destiny* . . . [to which] Bungie immediately objected[.]" (Opp. at 7:17–19 (emphasis added).) But this is the exact opposite of what

---

[4] Indeed, the Complaint contains no facts whatsoever as to when the purported negotiations began. (MTD at 15:16–17:2.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

Mr. Johnson said.  As Plaintiff's own allegations demonstrate, Mr. Johnson's statements on the November 8, 2018 earnings call praised the *Destiny* expansion (Forsaken), describing it as "the highest-quality content we've seen in the franchise to date." (¶ 46.) The Opposition also attempts to attribute changes to *Destiny's* "matchmaking" system to Activision's purported "over-reach[]."  (Opp. at 14:23–28.)   But the Complaint alleges that these changes were implemented and then rolled back solely by Bungie— *i.e.*, no involvement by Activision.  (¶ 33.)[5]  Finally, the fact that production was behind schedule (*see* Opp. at 15:16–21) does not diminish the companies' joint efforts that resulted in the production of high-quality *Destiny* content each year.

In any event, to the extent there were any problems dating back to January 2016 (as Plaintiff alleges), the fact that the companies continued to work together to produce high-quality *Destiny* content in 2016, 2017, and 2018 patently demonstrates that any such problems were not significant enough to warrant termination.

**Shifting of High Moon Studios Development Resources**.  Plaintiff next points to its purported allegation that in "late Spring 2018, Activision, through its subsidiary High Moon Studios, informed Bungie that it was withdrawing significant amounts of development resources from *Destiny*." (Opp. at 15:1–3 (citing ¶ 36).)  This "allegation," however, is not in the Complaint.  Paragraph 36 alleges that there was a meeting of High Moon Studios personnel in late Spring 2018, but it contains no allegations about Activision's involvement in this meeting, or any communications to Bungie.  (¶ 36; *see also* MTD at 19:20–20:2.)   Plaintiff cannot use its Opposition to add unfounded allegations omitted from the Complaint.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [an] opposition [to a]

---

[5] Indeed, as recently as August 26, 2019, Bungie publicly stated that it was ***not*** problems with Activision that led to the termination of the Licensing Agreement, stating "we need to dispel the notion Activision was some prohibitive overlord that wasn't letting us do awesome things . . . [w]e launched this franchise with Activision, naturally and over the course of time we both decided we had different goals for what we wanted it to be, so we both went our separate ways."   https://www.gamesradar.com/we-need-to-dispel-the-notion-activision-was-some-prohibitive-overlord-says-bungie/ (last visited Aug. 29, 2019).

motion [] are irrelevant for Rule 12(b)(6) purposes."); *Sec. & Exch. Comm'n v. Jammin Java Corp.*, 2016 WL 6595133, at *12 (C.D. Cal. July 18, 2016) (Wilson, J.) (same).

But even so, this argument does not establish (or even suggest) that termination negotiations were underway in August 2018.  Companies shift resources for many reasons, and Plaintiff does not allege that the purported shifting of High Moon Studio's resources here had anything to do with a permanent wind-down of *Destiny*'s development, problems between Activision and Bungie, or intentions to terminate the Licensing Agreement. (MTD at 19:21–24.)  There certainly are no particularized facts alleging as much.  Moreover, as noted in the Opening Brief, in 2018 the companies were developing an expansion pack, not a stand-alone game. (MTD at 20 n.9.)  Given the substantially reduced scope of work required to create an expansion pack, it is far more likely that High Moon Studio's resources shifted away from *Destiny* simply because they were no longer needed at that time. (MTD at 20 n.9.)

**NetEase Investment in Bungie**.  Finally, Plaintiff points to NetEase's June 2018 investment in Bungie and a January 2019 *Forbes* article that speculates the investment made the termination possible.  Plaintiff adopts this speculation, claiming it as evidence that negotiations to terminate the Licensing Agreement must have been underway in August 2018.  (Opp. at 15:3–7; ¶ 55.)  Citing an investment "which ***was later characterized as potentially*** 'the entire reason' why the Activision/Bungie split was possible" (*id.* (emphasis added)) does not make termination probable, let along signify that negotiations already were underway.  Instead, this is quintessential fraud-by-hindsight pleading that the PSLRA forbids. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002) ("Starting from this announcement, the plaintiffs speculate in hindsight that earlier projections made throughout the prior fifteen months must have been false for failure to disclose adverse facts."); *id.* at 1084–85 ("The purpose of [the PSLRA's] heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'").  Regardless of whether or not the NetEase investment made the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

termination possible, the investment in and of itself does not suggest that termination negotiations were underway as of August 2018. Bungie's statement at the time of the NetEase investment suggests no such thing: "If you're a player of Destiny, this news won't impact the hobby you've come to know. Destiny is an experience that will grow for many years to come. *We'll continue to work with our partners at Activision* to foster this global community . . . *Our commitment to that world is not diminished by this announcement.*" (ECF No. 78-2, Exh. L at 91.)

Put simply, all of these allegations fail to satisfy Rule 8's "plausibility" standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), much less the far more exacting pleading requirements demanded by Rule 9(b) and the PSLRA.

*    *    *

Plaintiff's final argument—which is wholly unsupported—is that "it makes no sense . . . that unwinding the Licensing Agreement only took a matter of weeks . . . when it took nine months to finalize it in 2010." (Opp. at 15:12–15:15.) But this argument only underscores Plaintiff's misunderstanding of business relationships. It is undoubtedly faster and simpler to undo a relationship (with a single cash payment), than to negotiate a set of financial and operational terms governing the development and release of an entire video game franchise over a ten-year period. Plaintiff's speculation to the contrary (Opp. at 15:23–16:7) cannot substitute for pleading particularized facts as required by the PSLRA. *See Plevy v. Haggerty*, 38 F. Supp. 2d 816, 829 (C.D. Cal. 1998) (dismissing complaint in light of plaintiffs' "pure speculation and conjecture").

**B.     The Challenged Statements Required No Additional Disclosures About the Status of the Activision/Bungie Relationship.**

To the extent Plaintiff intimates that Section 10(b) imposes a freestanding duty to disclose all material information, (*see* Opp. at 2:1–5, 16:13–15), Plaintiff is

fundamentally wrong.[6] *See Matrixx Initiatives, Inv. v. Siracusano*, 563 U.S. 27, 44–45 (2011). "Even with respect to information that a reasonable investor might consider material," Section 10(b) does "not create an affirmative duty to disclose any and all material information." *Id*. Thus, Plaintiff's argument that "a reasonable investor would want to know" whether "the relationship was dissolving by August 2018" (Opp. at 16:13–15) is a non-starter. *Matrixx*, 563 U.S. at 44–45 (2011) (holding that disclosure is required "only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'") (citation and internal quotes omitted).

Plaintiff also cites *Levinson v. Basic*, 871 F.2d 562 (6th Cir. 1989), to argue that the Company's characterization of *Destiny* as a "key product franchise" and Activision's relationship with Bungie as a "long term alliance" led investors "to believe that there had been no change to the Activision/Bungie relationship and there was no risk to the Company's ability to continue generating billions of dollars in revenue from sales of *Destiny*." (Opp. at 12:1–4.) Plaintiff's reliance is misplaced. (Opp. at 12:10–13:3.) As the Opposition concedes, the plaintiff in *Basic* "alleged that the defendant made several public statements denying that merger negotiations were taking place" when, in fact, they were ongoing. (Opp. at 12:13–15 (citing *Levinson*, 871 F.2d at 563).) Plaintiff makes no comparable allegations here. Nor could it; Defendants never publicly denied that negotiations with Bungie were taking place. To the contrary, the Company's disclosures made clear that its characterization of *Destiny* as a "key product franchise" and Activision's relationship with Bungie as a "long term alliance" were statements of past and present facts: "***Since 2010***, Activision has been in a long-term exclusive relationship with Bungie . . . During the term of the agreement, Activision has exclusive,

---

[6] Plaintiff appears to conflate a freestanding duty to disclose with a duty to disclose facts necessary to make statements made not misleading. (*See* Opp. at 11:19–11:25.) Although Plaintiff claims that Defendants "erroneously argue that the Complaint does not allege a duty to disclose," (Opp. at 11:19–20), in the very next paragraph, Plaintiff concedes that its argument is not based on any freestanding duty to disclose the status of its relationship with Bungie. (Opp. at 11:26–27.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

worldwide rights to publish and distribute on multiple platforms all future Bungie games based on Destiny." (MTD at 18 n.7 (citing ECF No. 78-2, Exh. D at 27 (emphasis added)).)

Plaintiff also summarily dismisses *River Birch Capital* and *Steckman*, claiming the cases "are not persuasive" because "Plaintiff has made no allegation that Defendants 'explicitly' promised future success under the terms of the Licensing Agreement." (Opp. at 16:20–17:6.) Plaintiff misconstrues both cases. As discussed in Defendants' Opening Brief, these cases stand for the proposition that accurate statements of historical and present fact, in and of themselves, make no guarantee about subsequent periods. (MTD at 18:3–14); *see also River Birch Capital, LLC v. Jack Cooper Holdings Corp.*, 2019 WL 1099943, at *4–5 (S.D.N.Y. Mar. 8, 2019) ("historical statements of fact regarding . . . status as a 'trusted provider' . . . are nonactionable as a matter of law"; "present statements of fact about the infrequency of customer switching and its resultant long-term relationships do not give rise to a claim"); *Steckman v. Hart Brewing, Inc.*, 1996 WL 881659, at *3 (S.D. Cal. Dec. 24, 1996) ("By disclosing its historical results for all completed periods in its Prospectus . . . Pyramid did not assume an obligation to make guarantees about subsequent periods."). In other words, the Company's "accurate historical reporting . . . [did] not imply a misleading projection of future results." *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993). Plaintiff identifies no legal authority to the contrary. (*See* Opp. at 16:20–17:6.)

**C.    Even If Negotiations Were Underway, Defendants Had No Duty to Disclose Speculative or Uncertain Outcomes.**

Based on its unsupported premise that negotiations were already underway, Plaintiff argues that Defendants were, therefore, obligated to disclose the "true status" of the Activision/Bungie relationship. (Opp. at 11:1–14:5.) As detailed above, Plaintiff has not alleged facts supporting its theory as to the "true status" of the Activision/Bungie relationship. (*See* Section III.A above.) But, even if Activision and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

Bungie had begun negotiations as early as August 2018, Defendants had no duty to disclose possible, but uncertain, outcomes. (MTD at 14:11–15:15.) The cases upon which Plaintiff relies are not to the contrary. (Opp. at 12:10–14:5.)

For example, Plaintiff relies on *In re Hi-Crush Partners L.P. Securities Litigation*, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013), (Opp. at 13:14–13:23), which was addressed in Defendants' Opening Brief, (MTD at 15:2–15:6). *Hi-Crush* hurts, not helps, Plaintiff's argument for several reasons. First, the court held that Hi-Crush "was *not* required to describe in detail any 'preliminary discussions' it had with Baker Hughes," noting that "[s]uch a requirement would impose 'substantial burdens on businesses.'" *Id.* at *8 (internal citations omitted and emphasis added). Second, the plaintiff in *Hi-Crush* alleged particularized facts demonstrating that Baker Hughes formally repudiated the companies' agreement on September 19. In light of these particularized facts, the court held that defendants' statements made *after* September 19 were actionable; those made prior to September 19 were not. *Id.* at *13–14. Here, Plaintiff has not alleged that Bungie sent Activision a formal (or any other) repudiation of the Licensing Agreement prior to August or November 2018. Thus, even if *Hi-Crush* establishes a duty to disclose a "purported termination" of an agreement, (Opp. at 13:14–17), no such circumstance has been pled with particularity here.

Plaintiff also cites *Hutchins v. NBTY, Inc.*, 2012 WL 1078823, (E.D.N.Y. Mar. 30, 2012) for the proposition that a company is required to disclose the "potential loss" of a large customer.[7] *Id.* at * 6. But the holding in *Hutchins* is not so broad. In *Hutchins*,

---

[7] Plaintiff argues that *Hutchins* "directly collides" with *In re Express Scripts Holdings Co. Securities Litigation*, 2019 WL 2004302 (2d Cir. May 7, 2019), which holds that "companies are not required to disclose the details of ongoing negotiations where the outcome is uncertain." (Opp. at 13 & n.3.) *Hutchins*, however, is a 2012 opinion from the Eastern District of New York; *In re Express Scripts* is a 2019 opinion from the Second Circuit. To the extent there is direct collision, the presumption is that *Hutchins* is no longer good law, and Plaintiff's citation to it is improper. *See Motorcar Parts of Am., Inc. v. FAPL Holdings Inc.*, 2015 WL 12746204, at *3 n.3 (C.D. Cal. Feb. 6, 2015) (noting that to the extent a district court opinion conflicts with a circuit opinion, the court must follow the circuit opinion); Cal. R. Prof. Conduct 3.3, cmt. 1 (prohibiting counsel from making false statements of law, including "citing as authority a decision that has been overruled").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

the plaintiff challenged NBTY's statements concerning its expectations of *future* gross margins and advertising costs (*i.e.*, its profitability), including statements that "NBTY's reported gross margins of approximately 45% for the two most recent fiscal quarters . . . were indicative of its ongoing performance" and that its "recently reported gross margins were sustainable." *Id.* at *1. The plaintiff alleged these statements were false and misleading because NBTY's largest customer, Wal-Mart, had *already informed* NBTY that it would put out competitive bids for the products it had purchased from the NBTY for the last ten years. *Id.* at *1–2. Because Wal-Mart had no obligation to purchase from NBTY, its unilateral decision to put out competitive bids had "inevitable consequences" on NBTY's profitability, as NBTY would need to lower its prices to keep any business with Wal-Mart and increase its advertising spend to reach new customers to fill the gap left by Wal-Mart. *Id.* at *5.

In contrast, Bungie had no unilateral right to terminate the relationship with Activision, which was governed by the Licensing Agreement. (Opp. at 4:10–12; ¶ 24.) Nor has Plaintiff alleged that Bungie notified Activision prior to August 2018 that Bungie even wanted to terminate the Licensing Agreement. And most critically, the statements Plaintiff challenges were grounded in the past and present; they did not affirmatively set expectations for the future of the *Destiny* franchise or the Activision/Bungie relationship. (MTD at 17:23–18:14; Opp. at 16:20–21.)

*        *        *

In short, the Opposition confirms that the Complaint fails to plead falsity with the particularity demanded by Rule 9(b) and the PSLRA. Further, it confirms that this failure cannot be remedied. As such, dismissal of the Complaint should be with prejudice.

## IV.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

As to scienter, the Opposition focuses on each side's competing arguments (Opp. at 18:4–17), but the proper focus should be on competing inferences cognizable from the facts alleged. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324,

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM

(2007) ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference *one could draw from the facts alleged*." (emphasis added)).  And the facts alleged do not support *any* inference of scienter, much less a cogent and compelling one.

As an initial matter, the Opposition admits the allegations concerning the purported High Moon Studios meeting do not support scienter.  (Opp. at 20:22–26.)  Rather, Plaintiff relies solely on (i) the alleged terms of the Licensing Agreement, (ii) the core operations inference, and (iii) Defendants' purported motive.  None of these pass muster under the PSLRA and Supreme Court precedent.

**A.    The Licensing Agreement Does Not Raise a Strong Inference of Scienter.**

The Opposition fails to address the arguments raised in Defendants' Opening Brief as to the provisions of the Licensing Agreement upon which Plaintiff relies to support scienter.  (MTD 20:10–21:12.)  Instead, Plaintiff simply regurgitates the allegations from the Complaint, claiming that because the Licensing Agreement was terminated, there must have been serious disputes that Defendants must have known about.  (Opp. at 18:18–19:8.)  Certainly, at least some of the Defendants eventually knew that the companies were negotiating a termination of the Licensing Agreement.  The critical inquiry, however, is not if but *when* they became aware.  *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1157 (S.D. Cal. 2008) ("[T]he complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made*.") (emphasis added).  The Licensing Agreement does not, and cannot, address this question for at least two reasons.  First, the Licensing Agreement does not require the Individual Defendants' involvement in dispute resolution.  (*See* MTD at 20:12–21:5.)  And second, it contains no timeline for the dispute resolution process that would suggest (much less require) a months-long negotiation.  (MTD at 21:6–12.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

## B. The Core Operations Inference Does Not Raise a Strong Inference of Scienter.

Plaintiff also relies heavily on the core operations inference (Opp. at 19:9–21:19), which permits an inference of scienter based on "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements . . . *when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company*." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017) (emphasis added).

Plaintiff misstates its own allegations to support this argument. Specifically, the Opposition falsely attributes statements made by **Bungie's** Chief Operating Officer—that *Destiny* was **his** "number one priority" and **he** would be "entirely focused" on the game—to Activision executives. (Opp. at 19:21–25 (citing ¶ 31).) Plaintiff's tenuous grasp of its own allegations underscores the Complaint's lack of facts supporting a strong inference of scienter.

Nor does Plaintiff's cited authority suggest that the core operations inference is applicable here. (Opp. at 20:15–21 (citing *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009) and *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008)).) In both *Matrixx* and *Berson*, plaintiffs pled particularized facts regarding *specific information* accessible to defendants that *directly contradicted defendants' public statements*. For example, in *Matrixx,* the plaintiff identified specific reports, customer complaints, presentations, conversations, and litigation that demonstrated, at the time the challenged statements were made, the company knew of the link between the company's drug and the loss of the sense of smell, and yet *explicitly denied* the link. 585 F.3d at 1183. Similarly, in *Berson,* the complaint included allegations from four confidential witnesses identifying the date, amount, and impact of the stop-work orders received from two agencies that accounted for 80% of the company's revenues. 527 F.3d at 984–85. In light of the significance of these orders, and the particularized

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM

facts demonstrating a stop-work order had already been received, the court applied the core business inference to infer scienter as to the individual defendants. *Id.* at 987–89.

Here, however, Plaintiff has not alleged any particularized facts demonstrating that negotiations to terminate the Licensing Agreement were already underway in August or November 2018. "Without sufficiently alleging actual falsity, [P]laintiff[] cannot rely on the concept of core operations to infer scienter as to [any] of the individual defendants." *In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at \*10 (N.D. Cal. Oct. 19, 2010) (citing *Berson* and *Matrixx*)).[8]

### C. Plaintiff's Motive Allegations Do Not Bolster Any Inference of Scienter.

Again, the Opposition does not address the arguments in Defendants' Opening Brief. (Opp. at 21:20–22:10.) Plaintiff provides no explanation how purportedly delaying disclosure until January 10, 2019 "broke" the "cycle of bad news." (MTD at 21:15–22:2.) Nor does Plaintiff address the fact that this alleged motive is one that courts routinely reject because it is common to all companies. (MTD at 22:3–17.) Apparently, having accepted that these allegations are insufficient on their own, Plaintiff argues they "simply buttress" the allegations concerning the Licensing Agreement terms and core operations inference. (Opp. at 22:11–18.) But, as discussed above, neither the Licensing Agreement's terms nor the core operations inference support a strong inference of scienter.

### D. Collectively, Plaintiff's Allegations Do Not Raise a Strong Inference of Scienter.

The facts remain: (i) there is not a single allegation anywhere in the Complaint to suggest that any Defendant intended to deceive investors; (ii) there are no confidential

---

[8] For this same reason, Plaintiff's dismissal of *Yelp* is unwarranted. (Opp. at 21:7–19.) As in *Yelp*, Plaintiff here does not allege that any Defendants "had specific information" regarding negotiations or termination of the relationship with Bungie. 875 F.3d at 1227. Even worse, Plaintiff's allegations do not demonstrate that discussions to terminate were even taking place at the time the challenged statements were made.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

**REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM**

witness allegations; (iii) there are no documents inconsistent with Activision Blizzard's public statements; and (iv) there are no suspicious stock sales.

Yes, Plaintiff argues that because *Destiny* was a "key product franchise," Defendants must have known the details of the Activision/Bungie relationship. But what details? What was it that Defendants knew? And when? The Complaint does not say. Nor does it contain any particularized allegations demonstrating that termination was discussed (much less imminent) in August or November 2018.

* * *

Plaintiff's allegations thus fail to support a strong inference of scienter, and also warrant dismissal of the Complaint with prejudice.

## V. PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION.

The Opposition confirms that Plaintiff's loss causation allegations are based on a "corrective disclosure" theory. (Opp. at 23 n.8.) Plaintiff does not, however, show that the cited disclosure "corrected" the historically accurate statements that Activision and Bungie **had** established a "long-term alliance" and that *Destiny* **was** a "key product franchise." At most, the Complaint advances a narrative in which Activision Blizzard's stock price dropped on "unexpected" news, which does not qualify as a "corrective" disclosure. (Opp. at 23:7.) *See In re BofI Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1135 (S.D. Cal. 2018) ("A corrective disclosure must be relevant to the alleged misrepresentation at issue; it must 'relate back to the misrepresentation and not to some other negative information about the company.'") (citation omitted); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 476 n.9 (4th Cir. 2011) ("Nor does every announcement of bad news constitute a corrective disclosure. In a financial market wrought with turmoil across the spectrum, '[t]he standard cannot be so lax that every announcement of negative news becomes a potential 'corrective' disclosure.'") (citation omitted); *Meyer v. Greene*, 710 F.3d 1189, 1202 (11th Cir. 2013) ("In the financial markets, not every bit of bad news that has a negative effect on the price of a security necessarily has a *corrective* effect for purposes of loss causation.").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM

\* \* \*

Plaintiff's failure to plead adequately loss causation provides a third independent basis to dismiss the Complaint.[9]

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint. And because the Opposition rehashes arguments and allegations in the Complaint manifestly insufficient to meet the heightened pleading standards of Rule 9(b) and the PSLRA, dismissal should be with prejudice. *In re Vantive*, 283 F.3d at 1097 ("Leave to amend need not be granted when an amendment would be futile.").

Dated:     August 30, 2019     COOLEY LLP

/s/ Koji F. Fukumura
Koji F. Fukumura (189719)
Attorneys for Defendants
ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, AND COLLISTER JOHNSON

Dated:     August 30, 2019     IRELL & MANELLA LLP

/s/ Craig Varnen
Craig Varnen (170263)
Alaina Bird (318044)

Attorneys for Defendant
SPENCER NEUMANN

---

[9] Because Plaintiff fails to plead a primary violation of Section 10(b), its Section 20(a) claim also fails. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

REPLY I/S/O MOTION TO DISMISS
CONSOLIDATED COMPLAINT
2:19-CV-03788-SVW-AFM

## **ATTESTATION**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Koji F. Fukumura, attest on behalf of all other signatories that concurrence in the content of this filing and authorization to make this filing have been obtained from each of the other signatories.

Dated:      August 30, 2019

*/s/ Koji F. Fukumura*
Koji F. Fukumura

210249683

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

**REPLY I/S/O MOTION TO DISMISS**
**CONSOLIDATED COMPLAINT**
**2:19-CV-03788-SVW-AFM**