UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-03788-SVW-AFM | Date | October 17, 2019 |
| Title | *Chase Hamano v. Activision Blizzard, Inc. et al* | | |

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION [88] AND GRANTING DEFENDANTS' MOTION TO DISMISS [78]

Activision Blizzard, Inc. et al. ("Activision") move for reconsideration on the theory that this Court "did not determine whether Plaintiff has met the heightened pleading standards . . . the PSLRA ***requires*** the Court to make" under the standard set forth in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("*Tellabs*"). Dkt. 88 at 1 (emphasis in original). This wrongly assumes the Court did not make the requisite determination because the reasoning was not fully articulated in our brief Order. *See* Dkt. 84. Chase Hamano ("Plaintiff") opposes the motion on the grounds it violates Local Rule 7-18, and the previous Order does not demonstrate "clear error" or "manifest injustice" towards the Defendants. Fed. R. Civ. P. 60(b); Dkt. 97 at 1. We agree that our previous Order does not fail "to consider any material facts." Dkt. 97 at 1. In considering the Defendants' previous motion to dismiss, however, the Court misapplied the standard articulated in *Tellabs*. We therefore GRANT the defendants' motion for reconsideration, and reverse our previous Order denying the defendants' motion to dismiss. Upon further consideration, the defendants' motion to dismiss is GRANTED.

## I. Factual Allegations

Plaintiff has failed to allege "with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud' " *Tellabs*, 551 U.S. at 313 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)). In support of its

| | | |
|---|---|---|
| | | : |
| Initials of Preparer | PMC | |

theory of liability, Plaintiff has only provided sparse factual allegations to imply the scienter necessary for liability under the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4.

To support its allegations of fraud, Plaintiff has pleaded the following: In June of 2018, roughly seven months before the dissolution, a Chinese internet technology company called NetEase invested $100 million into Bungie. Dkt. 78-1. This could potentially be interpreted as a move by Bungie to extricate itself from its publishing relationship with Activision, but Bungie's conduct is not at issue in this case. The structure of Activision's relationship with Bungie allows Activision to terminate the agreement "for any reason in Activision's sole discretion" but does not provide the same discretion to Bungie. *Id.* While Bungie's decision to terminate the relationship might require a more structured exit, Activision could theoretically terminate the agreement at any time. So, evidence of Bungie's potential preparation to leave the relationship is not particularly relevant to Activision's intent to terminate. By Plaintiff's own allegation, Bungie eventually paid Activision $164 million to end the relationship. Dkt. 80 at 9.

Around the same time as the NetEase investment, Activision removed most of its supplementary game developers (High Moon and Vicarious Visions) from Bungie's products. Dkt. 78-1 at 10; Dkt. 80 at 7. But this shift of development resources does not imply an impending dissolution of the relationship or Activision's knowledge thereof. It is equally plausible Activision diverted developers away from Bungie's products for non-nefarious reasons, and the facts alleged to not rebut any of those inferences. *See* Dkt. 82 at 7.

November 8, 2018, just before the filing of the third-quarter 10-Q, Plaintiff alleges Bungie and Activision engaged in contentious earnings call.[1] Dkt. 80 at 7. But even as alleged, the call does not show an intent to end the relationship or any knowledge of impending dissolution. Based on the statements provided, there is no mention, or even implication, that if earnings did not improve Activision was considering terminating the agreement with Bungie. If anything, tension about the quality and financial performance of the Destiny franchise could support an equally plausible inference that both Bungie and Activision were still seriously invested in Destiny's future. If Activision were fully

[1] If the alleged called took place on November 8, 2018, this information is not within the purview of the contested statements on the second and third-quarter 10-Qs of 2018. *See infra* note 2. It may, however, be relevant to consider the speed at which the relationship between Activision and Bungie eventually dissolved– independent of any liability under the contested statements.

ready to abandon the franchise, it makes little sense that they would dedicate valuable executive resources to its continued performance or profitability.

### II. Allegedly False or Misleading Statements

Plaintiff premises liability for this action on Activision's statements in its second and third-quarter 10-Q filings of 2018. Dkt. 80 at 8. Under second and third-quarter 10-Qs, Activision had a duty to accurately report information to the Securities and Exchange Commission for the period from March 31, 2018 to September 30, 2018.[2] Plaintiff states that, in light of the alleged events preceding the second and third-quarter 10-Q filings, Activision had a duty to either report on the difficulties Activision was facing with Bungie or remain silent. Dkt. 80 at 2. On August 5, 2018 (second quarter) and November 8, 2018 (third quarter), Activision released 10-Qs with the following contested statements:

> August 2, 2018: And the team at Bungie and the team at Activision have made a lot of strides in doing that, particularly [the] last 2 quarters with the ongoing improvements in the end game and the overall gameplay experience.
>
> November 8, 2018: And it really kind of have [sic] Activision and Bungie working together to address community concerns post-Destiny 2 holistically.
>
> August 2 and November 8, 2018: We have also established a long-term alliance with Bungie to publish its game universe, Destiny.
>
> August 2 and November 8, 2018: Describing Destiny as one of Activision's key product franchises.

Dkt. 78-1 at 9 (internal quotations omitted). Plaintiff has pleaded particular statements that, if false or misleading, could be considered material. Plaintiff is also correct that, even if these statements are literally true, "statements literally true on their face may nonetheless be misleading when considered in

---

[2] *See* U.S Sec. Exch. Comm'n, *Form 10-Q*, Fast Answers (Sep. 2, 2011) https://www.sec.gov/fast-answers/answersform10qhtm.html; U.S. Sec. Exch. Comm'n, *Activision Blizzard, Inc.*, Filing Detail, https://www.sec.gov/Archives/edgar/data/718877/000110465918030305/0001104659-18-030305-index.htm (last visited Oct. 10, 2019); U.S. Sec. Exch. Comm'n, *Activision Blizzard, Inc.*, Filing Detail, https://www.sec.gov/Archives/edgar/data/718877/000110465918067000/0001104659-18-067000-index.htm (last visited Oct. 10, 2019).

context . . . .” *Miller v. Thane Int’l., Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). What Plaintiff has failed to allege, however, is the factual context necessary to imply Activision made these statements fraudulently.

**III. Strong Inference of Scienter**

Plaintiff’s combined facts and allegations “when considered holistically” do not “give rise to a strong inference of scienter.” *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1048 (9th Cir. 2014). “To determine whether the plaintiff has alleged facts that give rise to the requisite strong inference of scienter,” the court considers “plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.” *Tellabs*, 551 U.S. at 551. “The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences.” *Id.* (internal quotation marks omitted).

In this case, we cannot conclude the “nonculpable explanation for the defendant’s conduct” is less plausible than the nefarious justification. Plaintiff has alleged four basic facts to imply Activision knew the relationship with Bungie was ending when it issued its statements: 1) the NetEase investment of $100 million in Bungie seven months prior to the split, 2) the removal of supplemental developers from Destiny, 3) the structure of the agreement between Bungie and Activision, and 4) the contentious earnings call in November of 2018. As explained above, each of the factual allegations Plaintiff provides have an equally-plausible non-culpable explanation. Taken together, these facts do not raise a strong inference of scienter. Inferring scienter from these sparse allegations would require impermissible speculation. Based on the facts alleged, it is plausible that, despite the negative financial consequences that followed, [3] Activision ended its relationship with Bungie in the three months between its third-quarter 10-Q liability and December 31, 2018.[4]

We need not determine Activision’s exact motivation for each of the alleged actions, but based on these facts, we hold a “reasonable person would deem” the nonculpable inference is “at least as compelling as any opposing inference one could draw from the facts alleged.” *Tellabs*, 551 U.S. at 324.

---

[3] Plaintiff alleges Activision’s stock price dropped $4.77 after the announcement of the split– a loss of over $3.64 billion in market capitalization. Dkt. 80 at 1. Defendants concede the stock price dropped to $46.17 following the announcement, but do not provide a relevant starting price with which to estimate the loss. Dkt. 78-1 at 6. Without deciding the issue in this motion, it worth noting the level of financial damage caused by the announcement of the dissolution is disputed and susceptible to multiple inferences of causation.

[4] The 10-Q containing the contested statements covered a period until September 30, 2018, and Activision terminated its relationship with Bungie on December 31, 2018, announcing the dissolution on January 10, 2019. Dkt. 78-1 at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-03788-SVW-AFM | Date | October 17, 2019 |
| Title | *Chase Hamano v. Activision Blizzard, Inc. et al* | | |

Plaintiffs have therefore failed to meet the pleading requirements of the PSLRA as interpreted by *Tellabs*, and the complaint must fail.

**IV. Conclusion**

For the reasons stated above, Defendants motion for reconsideration is GRANTED. Upon reconsideration, Defendants' motion to dismiss is GRANTED. Plaintiff is given twenty-one days to amend the complaint. Further pleadings must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter . . . ." *Tellabs*, 551 U.S. at 313. Failure to comply with this Order upon amendment may result in dismissal with prejudice and without leave to amend.

IT IS SO ORDERED.

:

Initials of Preparer PMC